JS 44 (Rev. 03/24)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Margaret Evangelisti

**(b)** County of Residence of First Listed Plaintiff: Delaware County
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Daniel S. Orlow, Console Mattiacci Law Offices,
1525 Locust Street, 9th Floor, Philadelphia, PA 19102
215-545-7676

## DEFENDANTS

Hospital of the University of Pennsylvania, University of Pennsylvania Health System, Trustees of the University of Pennsylvania

County of Residence of First Listed Defendant: Philadelphia
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [x] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [X] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [X] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- [ ] 110 Insurance
- [ ] 120 Marine
- [ ] 130 Miller Act
- [ ] 140 Negotiable Instrument
- [ ] 150 Recovery of Overpayment & Enforcement of Judgment
- [ ] 151 Medicare Act
- [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- [ ] 153 Recovery of Overpayment of Veteran's Benefits
- [ ] 160 Stockholders' Suits
- [ ] 190 Other Contract
- [ ] 195 Contract Product Liability
- [ ] 196 Franchise

**REAL PROPERTY**
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers' Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury
- [ ] 362 Personal Injury - Medical Malpractice

PERSONAL INJURY
- [ ] 365 Personal Injury - Product Liability
- [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- [ ] 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

**CIVIL RIGHTS**
- [ ] 440 Other Civil Rights
- [ ] 441 Voting
- [x] 442 Employment
- [ ] 443 Housing/ Accommodations
- [ ] 445 Amer. w/Disabilities - Employment
- [ ] 446 Amer. w/Disabilities - Other
- [ ] 448 Education

**PRISONER PETITIONS**

Habeas Corpus:
- [ ] 463 Alien Detainee
- [ ] 510 Motions to Vacate Sentence
- [ ] 530 General
- [ ] 535 Death Penalty

Other:
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition
- [ ] 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 690 Other

**LABOR**
- [ ] 710 Fair Labor Standards Act
- [ ] 720 Labor/Management Relations
- [ ] 740 Railway Labor Act
- [ ] 751 Family and Medical Leave Act
- [ ] 790 Other Labor Litigation
- [ ] 791 Employee Retirement Income Security Act

**IMMIGRATION**
- [ ] 462 Naturalization Application
- [ ] 465 Other Immigration Actions

**BANKRUPTCY**
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

**INTELLECTUAL PROPERTY RIGHTS**
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 835 Patent - Abbreviated New Drug Application
- [ ] 840 Trademark
- [ ] 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g))

**FEDERAL TAX SUITS**
- [ ] 870 Taxes (U.S. Plaintiff or Defendant)
- [ ] 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- [ ] 375 False Claims Act
- [ ] 376 Qui Tam (31 USC 3729(a))
- [ ] 400 State Reapportionment
- [ ] 410 Antitrust
- [ ] 430 Banks and Banking
- [ ] 450 Commerce
- [ ] 460 Deportation
- [ ] 470 Racketeer Influenced and Corrupt Organizations
- [ ] 480 Consumer Credit (15 USC 1681 or 1692)
- [ ] 485 Telephone Consumer Protection Act
- [ ] 490 Cable/Sat TV
- [ ] 850 Securities/Commodities/ Exchange
- [ ] 890 Other Statutory Actions
- [ ] 891 Agricultural Acts
- [ ] 893 Environmental Matters
- [ ] 895 Freedom of Information Act
- [ ] 896 Arbitration
- [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- [ ] 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing **(*Do not cite jurisdictional statutes unless diversity*)**:
42 U.S.C. § 12101, et seq.; 43 P.S. § 951, et seq.; Phila. Code § 9-1101, et seq.

Brief description of cause:
Plaintiff was discriminated against based on her disability.

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

**DEMAND $** In excess of $75,000.00

CHECK YES only if demanded in complaint:
**JURY DEMAND:** [x] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):* JUDGE ______ DOCKET NUMBER ______

DATE: 10/12/2026

SIGNATURE OF ATTORNEY OF RECORD: [signature]

**FOR OFFICE USE ONLY**

RECEIPT # ______ AMOUNT ______ APPLYING IFP ______ JUDGE ______ MAG. JUDGE ______

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## DESIGNATION FORM

Place of Accident, Incident, or Transaction: Philadelphia, PA 19104

***RELATED CASE IF ANY:*** Case Number:______________________ Judge:________________________________

1. Does this case involve property included in an earlier numbered suit? Yes ☐
2. Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit? Yes ☐
3. Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit? Yes ☐
4. Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same individual? Yes ☐
5. Is this case related to an earlier numbered suit even though none of the above categories apply? If yes, attach an explanation. Yes ☐

I certify that, to the best of my knowledge and belief, the within case ☐ **is** / ☒ **is not** related to any pending or previously terminated action in this court.

**Civil Litigation Categories**

***A. Federal Question Cases:***

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts)
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Wage and Hour Class Action/Collective Action
- ☐ 6. Patent
- ☐ 7. Copyright/Trademark
- ☒ 8. Employment
- ☐ 9. Labor-Management Relations
- ☐ 10. Civil Rights
- ☐ 11. Habeas Corpus
- ☐ 12. Securities Cases
- ☐ 13. Social Security Review Cases
- ☐ 14. Qui Tam Cases
- ☐ 15. Cases Seeking Systemic Relief ***see certification below***
- ☐ 16. All Other Federal Question Cases. *(Please specify)*:______________________________

***B. Diversity Jurisdiction Cases:***

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury (*Please specify*):________________
- ☐ 7. Products Liability
- ☐ 8. All Other Diversity Cases: *(Please specify)*_____________ ______________________

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ **does** / ☒ **does not** have implications beyond the parties before the court and ☐ **does** / ☒ **does not** seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

**ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)**

I certify that, to the best of my knowledge and belief:

☒ Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

☐ None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| Margaret Evangelisti | : | CIVIL ACTION |
| v. | : | |
| Hospital of the University of Pennsylvania, et al. | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255. ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits. ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2. ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos. ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.) ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks. (X)

| 10/12/2026 | [signature] | Plaintiff, Margaret Evangelisti |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| (215) 545-7676 | (215) 405-2900 | orlow@consolelaw.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

**IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **MARGARET EVANGELISTI**<br>St. Davids, PA 19087<br><br>***Plaintiff,***<br><br>v.<br><br>**HOSPITAL OF THE UNIVERSITY OF PENNSYLVANIA**<br>51 N. 39th Street<br>Philadelphia, PA 19104<br><br>and<br><br>**UNIVERSITY OF PENNSYLVANIA HEALTH SYSTEM**<br>51 N. 39th Street<br>Philadelphia, PA 19104<br><br>and<br><br>**TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA**<br>51 N. 39th Street<br>Philadelphia, PA 19104<br><br>***Defendants.*** | CIVIL ACTION NO.: _______________<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT AND JURY TRIAL DEMAND**

## I. INTRODUCTION

Plaintiff, Margaret Evangelisti ("Plaintiff"), brings this action against her former employers, Hospital of the University of Pennsylvania, University of Pennsylvania Health System, and Trustees of the University of Pennsylvania (collectively, "Defendants"), for discriminating against her because of her disability (including her recorded history thereof and Defendants' perception of her as a disabled person) and retaliating against her because of her seeking reasonable accommodations for her disability.

Defendants' unlawful conduct includes subjecting Plaintiff to a hostile work environment, failing to continue to provide Plaintiff with a reasonable accommodation for her disability, failing to select Plaintiff for any position for which she was qualified, and terminating her employment, in violation of the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101, *et seq.* ("ADA"), the Pennsylvania Human Relations Act, as amended, 43 P.S. § 951, *et seq.* ("PHRA"), and the Philadelphia Fair Practices Ordinance, Phila. Code § 9-1101, *et seq.* ("PFPO").

Plaintiff seeks all damages, including economic loss, compensatory damages, punitive damages, attorneys' fees and costs, and all other relief this Court deems appropriate.

## II. PARTIES

1. Plaintiff, Margaret Evangelisti, is an individual and a citizen of the Commonwealth of Pennsylvania, residing therein in St. Davids, PA.

2. At all relevant times, Plaintiff was "disabled" in that she suffered from an impairment, including breast cancer and its treatment and related symptoms, which substantially limited one or more of her major life activities, had a record of such impairment, and/or was regarded as having such impairment.

3. Defendant Hospital of the University of Pennsylvania is an unincorporated operating division of the Trustees of the University of Pennsylvania and part of the University of Pennsylvania Health System, and maintains offices located at 51 N. 39th Street, Philadelphia, PA 19104.

4. Defendant University of Pennsylvania Health System maintains offices located at 51 N. 39th Street, Philadelphia, PA 19104.

5. Defendant Trustees of the University of Pennsylvania is the owner and operator of the University of Pennsylvania Health System, of which the Hospital of the University of

Pennsylvania is a part, and maintains offices located at 51 N. 39th Street, Philadelphia, PA 19104.

6. At all relevant times, Defendants were engaged in an industry affecting interstate commerce and regularly did business in the Commonwealth of Pennsylvania.

7. At all relevant times, Plaintiff worked for Defendants in Philadelphia, Pennsylvania.

8. At all relevant times, Defendants employed fifteen (15) or more employees.

9. During Plaintiff's employment, Defendant Hospital of the University of Pennsylvania issued Plaintiff's tax Form W-2.

10. At all relevant times, Defendants collectively presented and conducted business as "Penn Medicine."

11. Defendants share common ownership, management, personnel policies, procedures, and employment practices.

12. At all relevant times, Defendants acted as a single employer, joint employers, and/or alter egos, and are interconnected such that they are considered a "single" and/or "integrated" employer and/or enterprise. Defendants collectively caused the actions complained of herein.

13. At all relevant times, Defendants acted by and through their authorized agents, servants, workmen, and/or employees acting within the course and scope of their employment with Defendants and in furtherance of Defendants' business.

14. At all relevant times, Defendants acted as an employer within the meaning of the statutes which form the basis of this matter.

15. At all relevant times, Plaintiff was an employee of Defendants within the meaning of the statutes which form the basis of this matter.

## III. JURISDICTION AND VENUE

16. The causes of action which form the basis of this matter arise under the ADA, the PHRA, and the PFPO.

17. This Court has jurisdiction over Count I (ADA) pursuant to 42 U.S.C. § 12117(a) and 28 U.S.C. § 1331.

18. This Court has supplemental jurisdiction over Count II (PHRA) and Count III (PFPO) pursuant to 28 U.S.C. § 1367.

19. Venue is proper in this District Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to these claims occurred within this District.

20. On or about October 3, 2024, Plaintiff filed a Complaint with the Philadelphia Commission on Human Relations ("PCHR"), complaining of the acts of discrimination and retaliation alleged herein. Plaintiff's PCHR Complaint was cross-filed with the Equal Employment Opportunity Commission ("EEOC"). Attached hereto, incorporated herein, and marked as Exhibit "1" is a true and correct copy of the PCHR Complaint (with personal identifying information redacted).

21. On or about July 16, 2026, the EEOC issued to Plaintiff a Notice of Right to Sue pertaining to Plaintiff's agency complaint. Attached hereto and marked as Exhibit "2" is a true and correct copy of that Notice (with personal identifying information redacted).

22. Plaintiff has fully complied with all administrative prerequisites for the commencement of this action.

## IV. FACTUAL ALLEGATIONS

23. Plaintiff was first hired by Defendants in 2001.

24. Plaintiff last held the position of Exercise Physiologist.

25. Plaintiff consistently performed her job duties in a competent manner.

26. Plaintiff last reported to Yael Malul, Manager.

27. Malul reported to Amanda Brock, Associate Director.

28. Brock reported to Lorri Schieri, Chief Operating Officer, Clinical and Translational Science, CHPS Administrative Committee.

29. In early May 2023, Plaintiff was diagnosed with breast cancer.

30. On May 15, 2023, Plaintiff informed Malul and Brock that she was diagnosed with breast cancer and needed to take a medical leave of absence for the same.

31. Plaintiff provided medical documentation in connection with her anticipated medical leave of absence.

32. Between approximately May 15 and June 5, 2023, Plaintiff took intermittent FMLA leave as needed as a reasonable accommodation for her disability.

33. On June 5, 2023, Plaintiff went out of work on an FMLA-protected medical leave of absence.

34. On June 6, 2023, Plaintiff underwent partial mastectomy surgery in connection with her breast cancer diagnosis.

35. From June 5 to September 7, 2023, Plaintiff was out of work on a medical leave of absence.

36. On September 7, 2023, Plaintiff returned to work from her medical leave of absence.

37. On October 16, 2023, following her request, Plaintiff was approved for the reasonable accommodation of working part time, three (3) days per week, with a weight limit of twenty (20) pounds, due to her disability, through April 16, 2024.

38. Plaintiff was able to perform her job with the above reasonable accommodation for her disability.

39. On March 14, 2024, in an email to Malul and Brock, Plaintiff stated that her symptoms, including fatigue and nausea, due to her breast cancer diagnosis and treatment, were continuing and that, per her doctors, she was requesting an extension of her reasonable accommodation of working part time, three (3) days per week, due to her disability.

40. On March 14, 2024, in a response email from Brock, Brock stated that Plaintiff should submit the updated paperwork for her accommodation request and, once it had been processed, she and Malul would follow up with Plaintiff.

41. On March 14, 2024, following the above, Plaintiff submitted the required documentation requesting an extension of her reasonable accommodation of working part time, three (3) days per week, due to her disability, from April 16 to October 16, 2024.

42. Plaintiff had been and continued to be able to perform her job duties with the requested reasonable accommodation for her disability.

43. On April 18, 2024, in a phone call with Lidia Corso, Senior Human Resources Business Partner, Plaintiff and Corso discussed that Plaintiff would continue to work three (3) days per week, as a reasonable accommodation for her disability.

44. Corso asked how Defendants would know that Plaintiff would not ask for an extension of the same accommodation in October 2024. Plaintiff stated that she was following her doctor's recommendations.

45. On April 22, 2024, in an email to Corso, Plaintiff confirmed that she would continue to work three (3) days per week, as a reasonable accommodation for her disability.

46. Plaintiff continued to work three (3) days per week, as a reasonable accommodation

for her disability.

47. Plaintiff was treated differently and worse, and in a more hostile and dismissive manner, than nondisabled employees and/or employees who did not seek a reasonable accommodation for a disability were treated.

48. Plaintiff was interacted with in a less congenial manner.

49. Plaintiff was excluded.

50. On June 21, 2024, in a letter from Corso, which Plaintiff received on June 24, 2024, Defendants terminated Plaintiff's employment, effective July 12, 2024. The stated reason was that Plaintiff's department was unable to continue her accommodation of working part time, three (3) days per week, as a full-time employee was needed in her position. Corso stated that Defendants would continue to accommodate Plaintiff until July 12, 2024.

51. On June 24, 2024, in a letter from Disability Management, Plaintiff was approved for intermittent leave as an accommodation for her disability through July 12, 2024.

52. On June 26, 2024, in a phone call with Leonard Umile, Associate Chief Human Resources Officer, Umile stated that Plaintiff's reasonable accommodation extension request was denied because her position needed to be performed on a full-time basis, and that Plaintiff's employment would be terminated on July 12, 2024.

53. Plaintiff expressed her desire to remain employed with Defendants.

54. Plaintiff worked with an internal recruiter to identify open positions for which she was qualified.

55. On or about June 27, 2024, Plaintiff applied for a posted part-time Exercise Physiology position. Plaintiff was qualified for the position.

56. On July 1, 2024, in an email to Brock, Plaintiff stated that she received the above

termination letter from Corso, and that she had no warning from Corso that she was not supportive of Plaintiff's accommodation extension request or that Plaintiff's request would be denied without further discussion with Plaintiff and her doctors.

57. On July 1, 2024, in a response email from Brock, Brock falsely stated that Corso told Plaintiff in April 2024 that her accommodation of working part time, three (3) days per week, due to her disability, could not be extended.

58. On July 2, 2024, in an email to Brock, Plaintiff stated that Corso had never previously told her of Defendants' decision to deny her accommodation extension request.

59. On July 8, 2024, in an email to Brock, copying Corso and Amanda Melchiorre, Senior Recruiter Clinical Talent Acquisition, Plaintiff stated that she was working with Melchiorre to apply for open positions for which she was qualified.

60. On July 8, 2024, in a conversation with Brock, Brock stated that she was upset with the way that things were handled regarding Plaintiff's employment, and apologized for the way things were handled. Brock stated that Plaintiff could have her same position back if she wanted to come back to work full-time.

61. On July 8, 2024, in a response email from Corso, Corso stated that Defendants could not continue to accommodate Plaintiff's three (3) day work schedule. Corso stated that Plaintiff had a maximum of three (3) months to find another position with Defendants.

62. On July 8, 2024, following the above, in an email to Corso, copying Brock, Umile, and Melchiorre, Plaintiff stated that she was upset that she was being terminated while undergoing cancer treatments after being denied her accommodation request, and after more than twenty (20) years of dedicated service and positive performance.

63. Plaintiff received no response to her above email.

64. On July 18, 2024, Plaintiff expressed interest in a posted full-time Exercise Physiology Specialist position with the reasonable accommodation of working part time for her disability. Plaintiff was qualified for the position.

65. On July 22, 2024, Plaintiff expressed interest in a posted full-time Exercise Physiology Specialist position with the reasonable accommodation of working part time for her disability. Plaintiff was qualified for the position.

66. Defendants failed to select Plaintiff for any position for which she was qualified.

67. On July 23, 2024, in an email from Corso, Corso stated that Plaintiff would remain an active employee until September 21, 2024.

68. Plaintiff continued to follow up with Melchiorre via email regarding open positions for which she was qualified.

69. On September 17, 2024, in an email to Melchiorre, Plaintiff again followed up regarding open positions for which she was qualified and stated that she had also been checking the job postings.

70. Plaintiff received no response to her above follow-up email to Melchiorre.

71. Plaintiff was the only employee reporting to Malul who was terminated on July 12, 2024.

72. Defendants terminated Plaintiff's employment because of her disability and/or her seeking reasonable accommodations for her disability.

73. Defendants subjected Plaintiff to a hostile work environment because of her disability and/or her seeking reasonable accommodations for her disability.

74. Defendants failed to select Plaintiff for any position for which she was qualified because of her disability and/or her seeking reasonable accommodations for her disability.

75. As a direct and proximate result of the discriminatory and retaliatory conduct of Defendants, Plaintiff has in the past incurred, and may in the future incur, a loss of earnings and/or earning capacity, loss of benefits, pain and suffering, embarrassment, humiliation, loss of self-esteem, mental anguish, and loss of life's pleasures, the full extent of which is not known at this time.

**COUNT I - ADA**

80. Plaintiff incorporates by reference the foregoing paragraphs as if set forth herein in their entirety.

81. By committing the foregoing acts of discrimination and retaliation against Plaintiff, Defendants have violated the ADA.

82. As a direct and proximate result of Defendants' violations of the ADA, Plaintiff has suffered the injuries, damages, and losses set forth herein and has incurred attorneys' fees and costs.

83. The conduct of Defendants, as set forth above, was willful, malicious, and outrageous under the circumstances and warrants the imposition of punitive damages against Defendants.

84. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

85. No previous application has been made for the relief requested herein.

**COUNT II - PHRA**

86. Plaintiff incorporates by reference the foregoing paragraphs as if set forth herein in their entirety.

87. By committing the foregoing acts of discrimination and retaliation against Plaintiff, Defendants have violated the PHRA.

88. Said violations were intentional and willful.

89. As a direct and proximate result of Defendants' violations of the PHRA, Plaintiff has suffered the damages and losses set forth herein and has incurred attorneys' fees and costs.

90. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

91. No previous application has been made for the relief requested herein.

**COUNT III - PFPO**

92. Plaintiff incorporates by reference the foregoing paragraphs as if set forth herein in their entirety.

93. By committing the foregoing acts of discrimination and retaliation against Plaintiff, Defendants have violated the PFPO.

94. Said violations were intentional, malicious, and/or willful, and done with reckless indifference to Plaintiff's rights, thereby warranting the imposition of punitive damages.

95. As a direct and proximate result of Defendants' violations of the PFPO, Plaintiff has suffered the damages and losses set forth herein and has incurred attorneys' fees and costs.

96. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

97. No previous application has been made for the relief requested herein.

## RELIEF

WHEREFORE, Plaintiff seeks damages and legal and equitable relief in connection with Defendants' unlawful conduct, and specifically prays that the Court grant the following relief to the Plaintiff by:

(a) declaring the acts and practices complained of herein to be in violation of the ADA;

(b) declaring the acts and practices complained of herein to be in violation of the PHRA;

(c) declaring the acts and practices complained of herein to be in violation of the PFPO;

(d) enjoining and permanently restraining the violations alleged herein;

(e) entering judgment against the Defendants and in favor of the Plaintiff in an amount to be determined;

(f) awarding damages to make the Plaintiff whole for all lost earnings, earning capacity, and benefits, past and future, which Plaintiff has suffered or may suffer as a result of Defendants' unlawful conduct;

(g) awarding compensatory damages to Plaintiff for past and future pain and suffering, emotional upset, mental anguish, humiliation, and loss of life's pleasures, which Plaintiff has suffered or may suffer as a result of Defendants' unlawful conduct;

(h) awarding punitive damages to Plaintiff under the ADA and the PFPO;

(i) awarding Plaintiff such other damages as are appropriate under the ADA, the PHRA, and the PFPO;

(j) awarding Plaintiff the costs of suit, expert fees and other disbursements, and reasonable attorneys' fees; and

(k) granting such other and further relief as this Court may deem just, proper, or equitable including other equitable and injunctive relief providing restitution for past violations and preventing future violations.

**CONSOLE MATTIACCI LAW, LLC**

By: */s/ Daniel Orlow*
DANIEL ORLOW, ESQ.
1525 Locust Street, 9th Floor
Philadelphia, PA 19102
Phone: (215) 545-7676
Fax: (215) 405-2900

Dated: October 12, 2026

*Attorneys for Plaintiff*

# Exhibit 1

CITY OF PHILADELPHIA
PHILADELPHIA COMMISSION ON HUMAN RELATIONS

**COMPLAINT**

| | |
|---|---|
| COMPLAINANT: | |
| **MARGARET EVANGELISTI** | Docket No. |
| v. | |
| RESPONDENTS: | |
| **HOSPITAL OF THE UNIVERSITY OF PENN** | |
| and | |
| **UNIVERSITY OF PENNSYLVANIA HEALTH SYSTEM** | |
| and | |
| **TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA** | |

1. The Complainant herein is:

Name: Margaret Evangelisti

Address: [redacted]
St. Davids, PA 19087

1. The Respondents herein are:

Names: Hospital of the University of Penn; University of Pennsylvania Health System; Trustees of the University of Pennsylvania

Address: 51 N. 39th Street
Philadelphia, PA 19104

2. I, Margaret Evangelisti, the Complainant herein, allege that I was subjected to unlawful discrimination because of my disability (including history of and regarded as) and retaliation because of my seeking reasonable accommodations for my disability, as set forth below.

**Discrimination and Retaliation**

**A. I specifically allege:**

[1] I was first hired by Respondents in 2001.

[2] I last held the position of Exercise Physiologist.

[3] I consistently performed my job duties in a competent manner.

[4] I last reported to Yael Malul, Manager. Malul reported to Amanda Brock, Associate Director. Brock reported to Lorri Schieri, Chief Operating Officer, Clinical and Translational Science, CHPS Administrative Committee.

[5] In early May 2023, I was diagnosed with breast cancer.

[6] On May 15, 2023, I informed Malul and Brock that I was diagnosed with breast cancer and needed to take a medical leave of absence for the same.

[7] I provided medical documentation in connection with my anticipated medical leave of absence.

[8] Between approximately May 15 and June 5, 2023, I took intermittent FMLA leave as needed as a reasonable accommodation for my disability.

[9] On June 5, 2023, I went out of work on an FMLA-protected medical leave of absence.

[10] On June 6, 2023, I underwent partial mastectomy surgery in connection with my breast cancer diagnosis.

[11] From June 5 to September 7, 2023, I was out of work on a medical leave of absence.

[12] On September 7, 2023, I returned to work from my medical leave of absence.

[13] On October 16, 2023, following my request, I was approved for the reasonable accommodation of working part time, three (3) days per week, with a weight limit of twenty (20) pounds, due to my disability, through April 16, 2024.

[14] I was able to perform my job with the above reasonable accommodation for my disability.

[15] On March 14, 2024, in an email to Malul and Brock, I stated that my symptoms, including fatigue and nausea, due to my breast cancer diagnosis and treatment, were continuing and that, per my doctors, I was requesting an extension of my reasonable accommodation of working part time, three (3) days per week, due to my disability.

[16] On March 14, 2024, in a response email from Brock, she stated that I should submit the updated paperwork for my accommodation request and, once it had been processed, she and Malul would follow up with me.

[17] On March 14, 2024, following the above, I submitted the required documentation requesting an extension of my reasonable accommodation of working part time, three (3) days per week, due to my disability, from April 16 to October 16, 2024.

[18] I had been and continued to be able to perform my job duties with the requested reasonable accommodation for my disability.

[19] On April 18, 2024, in a phone call with Lidia Corso, Senior Human Resources Business Partner, we discussed that I would continue to work three (3) days per week,

as a reasonable accommodation for my disability. Corso asked: how do we know that you will not ask for an extension of the same accommodation in October 2024? I stated that I was following my doctor's recommendations.

[20] On April 22, 2024, in an email to Corso, I confirmed that I would continue to work three (3) days per week, as a reasonable accommodation for my disability.

[21] I continued to work three (3) days per week, as a reasonable accommodation for my disability.

[22] I was treated differently and worse, and in a more hostile and dismissive manner, than nondisabled employees and/or employees who did not seek a reasonable accommodation for a disability were treated.

[23] I was interacted with in a less congenial manner.

[24] I was excluded.

[25] On June 21, 2024, in a letter from Corso, which I received on June 24, 2024, Respondents terminated my employment, effective July 12, 2024. The stated reason was that my department was unable to continue my accommodation of working part time, three (3) days per week, as a full time employee was needed in my position. She stated that Respondents would continue to accommodate me until July 12, 2024.

[26] On June 24, 2024, in a letter from Disability Management, I was approved for intermittent leave as an accommodation for my disability through July 12, 2024.

[27] On June 26, 2024, in a phone call with Leonard Umile, Associate Chief Human Resources Officer, he stated that my reasonable accommodation extension request was denied because my position needed to be performed on a full time basis, and that my employment would be terminated on July 12, 2024.

[28] I expressed my desire to remain employed with Respondents.

[29] I worked with an internal recruiter to identify open positions for which I was qualified.

[30] On or about June 27, 2024, I applied for a posted part time Exercise Physiology position. I was qualified for the position.

[31] On July 1, 2024, in an email to Brock, I stated that I received the above termination letter from Corso, and that I had no warning from her that she was not supportive of my accommodation extension request or that my request would be denied without further discussion with me and my doctors.

[32] On July 1, 2024, in a response email from Brock, she falsely stated that Corso told me in April 2024 that my accommodation of working part time, three (3) days per week, due to my disability, could not be extended.

[33] On July 2, 2024, in an email to Brock, I stated that Corso had never previously told me of Respondents' decision to deny my accommodation extension request.

[34] On July 8, 2024, in an email to Brock, copying Corso and Amanda Melchiorre, Senior Recruiter Clinical Talent Acquisition, I stated that I was working with Melchiorre to apply for open positions for which I was qualified.

[35] On July 8, 2024, in a conversation with Brock, she stated that she was upset with the way that things were handled regarding my employment, and apologized for the way things were handled. She stated that I could have my same position back if I wanted to come back to work full time.

[36] On July 8, 2024, in a response email from Corso, she stated that Respondents could not continue to accommodate my three (3) day work schedule. She stated that I had a maximum of three (3) months to find another position with Respondents.

[37] On July 8, 2024, following the above, in an email to Corso, copying Brock, Umile, and Melchiorre, I stated that I was upset that I was being terminated while undergoing cancer treatments after being denied my accommodation request, and after more than twenty (20) years of dedicated service and positive performance.

[38] I received no response to my above email.

[39] On July 18, 2024, I expressed interest in a posted full time Exercise Physiology Specialist position with the reasonable accommodation of working part time for my disability. I was qualified for the position.

[40] On July 22, 2024, I expressed interest in a posted full time Exercise Physiology Specialist position with the reasonable accommodation of working part time for my disability. I was qualified for the position.

[41] Respondents failed to select me for any position for which I was qualified.

[42] On July 23, 2024, in an email from Corso, she stated that I would remain an active employee until September 21, 2024.

[43] I continued to follow up with Melchiorre via email regarding open positions for which I was qualified.

[44] On September 17, 2024, in an email to Melchiorre, I again followed up regarding open positions for which I was qualified and I stated that I had also been checking the job postings.

[45] I received no response to my above follow-up email to Melchiorre.

[46] I had no performance or disciplinary issues throughout my more than twenty (20) years of service.

[47] Before I disclosed my disability to Respondents, I had no indication that my job was in jeopardy.

[48] I was the only employee reporting to Malul who was terminated on July 12, 2024.

[49] Respondents terminated my employment because of my disability and/or my seeking reasonable accommodations for my disability.

[50] Respondents subjected me to a hostile work environment because of my disability and/or my seeking reasonable accommodations for my disability.

[51] Respondents failed to select me for any position for which I was qualified because of my disability and/or my seeking reasonable accommodations for my disability.

[52] I had no opportunity to remain employed with Respondents with a reasonable accommodation for my disability.

[53] Respondents assigned my job duties and responsibilities to nondisabled employees and/or employees who had not sought reasonable accommodations for a disability. I was more qualified to perform my job duties and responsibilities than the nondisabled employees and/or employees who had not sought reasonable accommodations for a disability to whom my job duties and responsibilities were assigned.

[54] Respondents failed to remedy or prevent the disability discrimination and retaliation to which I was subjected.

[55] Respondents' disability discriminatory and retaliatory conduct toward me has caused me emotional distress.

[56] Respondents' comments and conduct evidence a bias against disabled and/or employees who seek reasonable accommodations for a disability.

**B.** Respondents have discriminated against me because of my disability (including history of and regarded as) and retaliated against me because of my seeking reasonable accommodations for my disability, in violation of the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101, *et seq.* ("ADA"), Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), the Pennsylvania Human Relations Act, as amended, 43 P.S. § 951, *et seq.* ("PHRA"), and the Philadelphia Fair Practices Ordinance, Phila. Code § 9-1101, *et seq.* ("PFPO").

3. The allegations in Paragraph 3 hereof constitute unlawful discriminatory practices in violation of:

**_X_ Philadelphia Fair Practices Ordinance, Phila. Code § 9-1101, *et seq.* ("PFPO"), Section __9-1103__.**

4. Other action based upon the aforesaid allegations has been instituted by the Complainant in any court or before any other commission within the Commonwealth of Pennsylvania as follows:

**_X_ This charge will be referred to the EEOC for the purpose of dual filing.**

5. The Complainant seeks that Respondents be required to:

(a) Make the Complainant whole.

(b) Eliminate all unlawful discriminatory and retaliatory practice(s) and procedure(s).

(c) Remedy the discriminatory and retaliatory effect of past practice(s) and procedure(s).

(d) Take further affirmative action necessary and appropriate to remedy the violation complained of herein.

(e) Provide such further relief as the Commission deems necessary and appropriate.

# VERIFICATION

I hereby verify that the statements contained in this complaint are true and correct to the best of my knowledge, information, and belief. I understand that false statements herein are made subject to the penalties of 18 P.A.C.A. Section 4904, relating to unsworn falsification to authorities.

October 3, 2024
(Date Signed)

(Signature) Margaret Evangelisti
[redacted]
St. Davids, PA 19087

# Exhibit 2

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**Philadelphia District Office**
801 Market St, Suite 1000
Philadelphia, PA 19107
(267) 589-9700
Website: www.eeoc.gov

## NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 7/16/2026

**To:** Margaret Evangelisti
[redacted]
Saint Davids, PA 19087

Charge No: 17G-2025-00002
EEOC Representative and email: State Local and Tribal Program Manager
PHLSTATEANDLOCAL@EEOC.GOV

---

### NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

The EEOC has granted your request for a Notice of Right to Sue, and more than 180 days have passed since the filing of this charge.

The EEOC is terminating its processing of this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice that the EEOC has dismissed your charge and has issued you notice of your right to sue the respondent(s) on this charge. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of EEOC's official notice of dismissal.** You should keep a record of the date you received the EEOC's official notice of dismissal. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On Behalf of the Commission:

Digitally Signed By: Karen McDonough 7/16/2026

Karen McDonough
Deputy District Director

cc:

For Respondent
Sean C Burke
Office of the General Counsel
2929 Walnut Street, Suite 400
Philadelphia, PA 19104

For Charging Party
Emily R Derstine Friesen Esq.
Console Mattiacci Law
1525 Locust Street, 9th Floor
Philadelphia, PA 19102

Please retain this notice for your records.